PROVOSTY, J.
Plaintiff sues in damages for the loss of his rice crop, which he says resulted from defendants’ breach of contract in not furnishing in time a certain irrigating pump, and in setting unskillfully another pump furnished temporarily in place of the pump contracted for, so that it broke at a-critical period, causing delays fatal to the crop.
Defendants, who seem to have been engaged in the business of boring wells and selling pumps for the irrigation of rice crops, contracted to bore a well for plaintiff, and took an order from him for a six-inch Morris pump. The pumping season was to begin on or about the 1st of June. Between Christmas and the 1st of January the well was completed, and by the 20th of January defendants had two car loads of pumps on hand at their establishment in the town of Jennings ready for delivery.
By the 18th of April, thinking that it was time that these pumps should be “gotten out” —-i. e., taken to the wells to which they were destined-defendants notified “the people that their pumps were on hand, ready for delivery.” This notification was by letters duly addressed and mailed and by newspaper publication. All came for their pumps except plaintiff.
Defendants say plaintiff’s pit was not dug, and that he was not ready for the pump. Defendants’ manager testifies that he met plaintiff in the latter part of April or the early part of May, and asked him why he had not gotten his pump out, and that plaintiff answered he was not ready for it, his pit not being dug. Plaintiff, on the other hand, testifies that his pit was completed by the 18th of April, and that he does not remember the conversation referred to. If this pit was thus ready, it is strange that plaintiff did not have the pump put in position. He was urged to do it by the mechanic who was to set the pump, who suggested that later he (the mechanic) might be engaged elsewhere. Plaintiff knew the importance of being ready to pump whenever the time should come, and the advisability of leaving as little as possible to the chapter of uncertainty and accident. He did not call for the pump until the 2d of June, when, hearing that defendants had sold it to another party, he came, and made a peremptory demand for it. Defendants explained that the sale of the pump had been purely by inadvertence, but that another Morris pump could be had in about a week, and that in the meantime he might have the use of a TCingsford pump of the same capacity, and equally good. Plaintiff declined to take the Kingsford, but a few days thereafter he came for it, and it was set to the well by defendants’ mechanic. Within a few days it broke, at a most critical time, when the weather was dry and hot and the rice burning. When the Morris pump arrived, plaintiff came for it, and defendants’ mechanic set it to the well, and it worked satisfactorily, but, as plaintiff contends, too late to .save the crop.
It is somewhat doubtful whether the. pumps were responsible for plaintiff’s failure to make the remunerative crop alleged in his *199 petition, but the preponderance of the evidence is that defendants were not responsible for any shortcomings of the pumps. During more than four months the pump was there ready to be delivered to plaintiff, and for more than a month he had been notified and urged to come and take it. When he did call he was told that another pump would be ordered for him by telegraph, and would ■be on hand within a week, and that in the meantime he could have the use of one that would serve his purpose equally well. We are satisfied that plaintiff was not ready with his pit, and that this it was which deterred him from taking the pump sooner and from availing himself at first of the offer of the Kingsford pump.' In that connection it is very significant that after the 2d of June he dug his pit two feet deeper; and that the engine which was to operate the pump was not put in position until the 7th of June. It is also a little singular that plaintiff should have left this question of the time when the pit was completed to his own uncorroborated, though contradicted, testimony, when the two laborers who plowed the land and planted and cultivated the rice for him, and who possibly themselves had dug the pit for him, appeared as witnesses on the stand, and yet •were not questioned on this subject, although in all probability they knew more than he himself did about the date of the completion of this pit, since he, on the 18th of April, the date on which he says the pit was completed, was sick in bed with typhoid fever in the town of Jennings.
On the trial, for the first .time, plaintiff ■made the point that it did not suffice for the defendants to have the pump on hand at their establishment in the town of Jennings ready for delivery, but that they should have set it in position ready for pumping, such having been their obligation under the contract.
We fail to find that by the contract defendants were required to transport the .pump.from their establishment in the town of Jennings to the plantation of plaintiff. In the written order for the pump the blank spaces for specification of time and place of delivery are left unfilled, thus: “To be delivered at on or before 190 .” This order was given more than a month after the contract for the well had been entered into — in fact, more than 20 days after the well had been completed. In the contract for the well there is the clause, “Party of the first part agrees to set the pump in pit ready for operation,” but this neither expressly nor •impliedly conveys the idea that defendants were to transport the pump. It would be different if the pump had formed part of the well in such way that without it the well could not have been completed, for then the mere obligation to complete the well would carry by necessary implication the obligation to transport the pump. Indeed, it would carry also the obligation to furnish it. But the pump formed no part of the well proper, no more than did the engine, or the pit which plaintiff was to cause to be dug for its installation. The contract proper for the sinking of the well was on a printed form, and this clause for the setting of the pump was not originally in it, but was added in writing at the instance of plaintiff. It obligated defendant to the extent that it specifies — to “set” the pump.
Not only is this the extent of the stipulation, but that was the interpretation which the parties placed upon it by their conduct. Plaintiff never thought of asking defendant to transport ■ this pump. Nay, without one word of demur, he transported both pumps, though he might well have required defendants to stand the expense of the transportation of one of them, since this additional expense was through their fault. But the truth of the matter is that the making of this point as to transportation was simply an afterthought. Moreover, we gather that the transporting of this pump was a mere bagatelle, a trifling expense which defendants *201 would in all probability have consented to undergo if demanded by plaintiff, rather than have any difference about it.
Plaintiff does not say that there was a definite understanding that defendants were to deliver this pump at the well, and he cannot say that the written contracts explicitly or unequivocally so required. Therefore, if he intended to hold defendants to the duty of making such a delivery under penalty of several thousand dollars, he should at least have made a demand upon them, or, at any rate, should not have remained silent, but should have spoken in response to their notice to him to come and get the pump.
So far as the unskillful setting of the pump is concerned, plaintiff does not pretend to say that defendants did not employ a competent mechanic, or that the mechanic did not do the work in workmanlike manner; but he complains that the plan, or scheme, or mode of the setting was bad, the pump being too rigidly attached to the well, so that it could not give with the settling of the well, but broke. The blame for this, if blame there was, does not rest on defendants. The evidence shows that this way of setting pumps is as much approved as any other, and, furthermore, that there is no certainty that the accident was attributable to the peculiar setting of the pump.
Judgment affirmed.